## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ELSA NEWMAN,

    Petitioner,

    v.

STATE OF MARYLAND,

    Respondent.

Civil Action No.:  RDB-21-62

## <u>MEMORANDUM OPINION</u>

Petitioner, Elsa Newman, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF Nos. 1, 4.  Respondents assert that the Petition should be dismissed because it is untimely.  ECF No. 6.  Newman concedes that her Petition is untimely but contends that the Court should consider her sole claim for relief through the actual innocence gateway. ECF Nos. 1, 4. After review of the pleadings filed, this Court deems a hearing in this matter unnecessary. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).  For the reasons that follow, the Petition shall be denied, and a certificate of appealability shall not issue.

## BACKGROUND

### I.    First Trial

In 2002, Newman was charged in the Circuit Court for Montgomery County with conspiracy to commit first degree murder, attempted first degree murder, first degree assault, first degree burglary, and use of a handgun in the commission of a felony. *Newman v. State*, 384 Md. 285 (2004).  After a trial by jury, on August 6, 2002, Newman was found guilty as charged.

*Newman v. State,* No. 1132, Sept. Term 2020, 2021 WL 3772030, at *4 (Md. Ct. Spec. App. Aug. 25, 2021), *cert. denied*, 476 Md. 597, 264 A.3d 1289 (2021).

On direct appeal, the Appellate Court of Maryland[1] affirmed Newman's convictions and sentence. *Newman v. State,* 156 Md. App. 20 (2003). Newman sought certiorari with the Maryland Supreme Court, arguing, *inter alia,* that the trial court erred when it permitted her divorce attorney to testify to matters covered by the attorney-client privilege. The Maryland Supreme Court granted certiorari, reversed Newman's conviction, and remanded to Montgomery County for a new trial.

The Maryland Supreme Court described the facts as follows:

Newman and Arlen Slobodow [hereinafter "Slobodow"] married in 1990, and thereafter they had two sons together, Lars and Herbie. In 1999, Newman's marriage to Slobodow deteriorated and the couple began divorce and custody proceedings in the Circuit Court for Montgomery County, Maryland during which Newman was represented by Friedman. During the course of Friedman's representation of Newman in the spring of 2001, Friedman asked Newman's close friend, Margery Landry [hereinafter "Landry"], to be present in his meetings with Newman for a "cool head in the room." Landry and Newman discussed various plans involving harming Newman's children and blaming Slobodow while in Friedman's presence.

On August 31, 2001, Newman met with Friedman in preparation for a custody hearing on September 4, 2001, before Circuit Court Judge James Ryan. At one point during her meeting with Friedman, Newman stated, "You know, I don't have to kill both children. I only need to kill Lars because I can save Herbie, and then Arlen [Slobodow] will go to jail and get what he deserves because he is a criminal, and I can at least save Herbie."

Friedman disclosed to Montgomery County Circuit Court Judge Louise Scrivener the statements made by Newman the previous Friday. After Judge Scrivener informed Judge James Ryan of Friedman's disclosure, Judge Ryan announced the substance of Friedman's disclosure during the custody hearing on September 4,

---

[1] At the time Newman's case was litigated in the Maryland state courts, the Appellate Court of Maryland was named the "Court of Special Appeals" and the Supreme Court of Maryland was named the "Court of Appeals of Maryland." At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of both courts. The name change took effect on December 14, 2022.

2001. Newman was granted supervised visitation and Friedmans appearance as her counsel of record was stricken. The trial on the merits was postponed until December 7, 2001, and then again to January 28, 2002.

Prior to the trial on the merits, on January 7, 2002, at approximately 3:30 a.m., Landry entered Slobodow's house through an unlocked basement window carrying pornographic materials and a Smith and Wesson 9MM handgun. In Slobodow's bedroom, she found him asleep in bed and fired two shots hitting Slobodow once in the right leg. Slobodow struggled with Landry, pulling off her mask, and Landry fled the bedroom. Slobodow went downstairs, was attacked once more by Landry, and during the altercation bit Landry's finger. Landry left the house.

Later that morning, Montgomery County Police arrested Landry at her home. On January 9, 2002, the State of Maryland filed charges against Newman for conspiracy to commit first degree murder and conspiracy to commit assault in the first degree, and Newman was arrested the following day. Thereafter, Landry pled guilty to assault, burglary, reckless endangerment, use of a handgun in the commission of a felony and obliterating the serial number on a gun. On December 17, 2002, she was sentenced to fifty years imprisonment, with all but twenty years suspended.

*Newman v. State*, 384 Md. 285, 290-92 (2004). The Maryland Supreme Court described the testimony given by Newman's divorce attorney at the 2002 jury trial, which included prejudicial comments made by Newman to her attorney about killing her husband. The Maryland Supreme Court then concluded that the trial court erred in admitting the attorney's testimony and the error was not harmless beyond a reasonable doubt because:

[O]nly Friedman's testimony connected Newman to Landry's attack on Slobodow and established the possible conspiracy. In light of the circumstantial nature of the State's case, we cannot conclude that the erroneous admission of Friedman's testimony was harmless beyond a reasonable doubt. Therefore, we hold that the admission of Friedman's testimony in violation of Newman's attorney-client privilege was reversible error, and we reverse the decision of the Court of Special Appeals with instructions to remand the case to the Circuit Court for Montgomery County for a new trial.

*Newman v. State*, 384 Md. 285, 312-13 (2004). Notably, the Maryland Supreme Court remanded to the circuit court with instructions for a new trial; not that a judgement of acquittal be entered.

## II.      Second Trial

Newman was tried by jury for a second time in the Circuit Court for Fredrick County, Maryland from September 26, 2005 to October 7, 2005. ECF No. 6-1 at 6. On October 7, 2005, the jury found Newman guilty on all counts. On November 21, 2005, Newman was sentenced to life, with all but twenty years suspended. *Id.* at 4-5. On the same day Newman was sentenced, she filed a motion for reconsideration of sentence. *Id*. at 9. The circuit court denied the motion on December 21, 2005. ECF No. 21-1 at 98.

Newman appealed her conviction to the Appellate Court of Maryland, which issued an opinion on May 4, 2007, affirming her conviction. ECF No. 6-1 at 15-61. The Maryland Supreme Court denied certiorari on November 8, 2007, and reconsideration on February 15, 2008. *Id.* at 6; ECF No. 21-1 at 114.

## III.     State Post-Conviction Proceedings

Newman filed her first petition for postconviction relief in the Circuit Court for Frederick County on March 4, 2009. ECF No. 21-1 at 115-124. Appointed counsel filed a supplemental petition on July 17, 2009. *Id.* at 125-140. The postconviction court held a hearing on August 17, 2009 (*id.* at 57) and issued an order denying relief on November 15, 2010. *Id.* at 173-199. Newman applied for leave to appeal the order on December 14, 2010. *Id.* at 207-226. The Appellate Court of Maryland denied leave on January 26, 2012, with the mandate issuing on February 27, 2012. *Id.* at 88-90.

While her postconviction proceedings were pending, on November 3, 2010, Newman filed a motion for appropriate relief in the Circuit Court for Frederick County, contending that she never received notice that her motion for reconsideration of sentence was denied. *Id.* at 169-171. The Circuit Court denied the motion on November 23, 2010. *Id.* at 206.

On October 5, 2011, Newman filed her first motion to reopen her postconviction proceedings in the Circuit Court for Montgomery County. ECF No. 21-2 at 13-58. The proceedings were transferred to Frederick County (*id.* at 91) and on October 22, 2012, the postconviction court denied the motion to reopen. ECF No. 21-1 at 35. Newman filed an application for leave to appeal and an amended application for leave to appeal, both on November 19, 2012. ECF No. 21-2 at 200-220. The Appellate Court of Maryland denied leave and issued the final mandate on June 30, 2015. *Id.* at 264-269.

Newman filed a second motion to reopen her postconviction proceedings on October 11, 2016, in the Circuit Court for Montgomery County. *Id.* at 270-290. The motion was transferred to Frederick County (*id.* at 291), and on August 14, 2017, the postconviction court denied the motion to reopen. *Id.* at 292-293. Newman applied for leave to appeal, which the Appellate Court of Maryland denied on January 31, 2018. *Id.* at 294-308. The mandate issued on March 6, 2018. *Id.* at 308.

**IV.     State Court Writ of Actual Innocence**

On August 13, 2012, Newman filed her first petition for a writ of actual innocence in the Circuit Court for Frederick County. ECF No. 21-2 at 119-158. Newman filed a motion to voluntarily dismiss the petition (*id.* at 221), which was granted on February 13, 2013. *Id.* at 575.

On March 19, 2020, Newman filed a second petition for a writ of actual innocence in the Circuit Court for Frederick County. ECF No. 6-1 at 62-80. Newman's petition alleged that she

qualified for release based on what she characterized as "newly discovered" evidence in the form of scholarly research on institutionalized bias against mothers in divorce proceedings. Newman argued that the research proves that a stipulation read to the jury at her trial created bias against her. The stipulation at issue informed the jury that Newman made allegations of child abuse against her husband on three separate dates, the allegations were investigated, and the investigations were closed. *Id.* at 72-73.

Newman attached research studies from 2012 and 2019, arguing that they demonstrate a substantial possibility of a different verdict. Newman argued the studies show that the court system overestimates the occurrence of false child abuse allegations and is especially disbelieving of mothers. *Id.* at 75. Newman contended that the stipulation created an impression that she made false allegations of child abuse. *Id.* at 73-74.  The Circuit Court issued an order on November 2, 2020, denying Newman's petition, finding that the allegations of child abuse were a collateral issue and, even if true, would not make it more or less probable that Newman was guilty of conspiracy to commit murder. *Id.* at 107-109.

Newman appealed the denial of her petition to the Appellate Court of Maryland, which issued an unreported opinion on August 25, 2021. *Newman*, 2021 WL 3772030. The Appellate Court of Maryland concluded that the 2012 study upon which Newman primarily relied, did not qualify as "evidence," was not "newly discovered," and did not create a substantial probability of a different result.  *Id.* at *9-10.

V.    **Federal Habeas Corpus Petition**

Newman seeks federal habeas corpus relief on the grounds that her 2005 trial violated the Double Jeopardy Clause of the Constitution because her original conviction was set aside based on insufficient evidence. ECF No. 4 at 24-30. As mentioned above, Newman concedes that her

petition is untimely and that her Double Jeopardy claim is unexhausted but seeks review of her claim through the "actual innocence" gateway. Newman advances substantially similar arguments to her state court petition for a writ of actual innocence, including reliance on the 2012 study by the United States Department of Justice: *Child Custody Evaluators' Beliefs About Domestic Abuse Allegations: Their Relationship to Evaluator Demographics, Background, Domestic Violence Knowledge and Custody-Visitation Recommendations* (ECF No. 1-1); and a 2019 law review article published by George Washington University of Law School: *Child Custody Outcomes in Cases Involving Parental Alienation and Abuse Allegations.* ECF No. 1-2.

## ANALYSIS

### I.      The Petition is Untimely

28 U.S.C. § 2244(d)(1) sets a one-year time limitation for seeking a writ of habeas corpus "pursuant to the judgment of a State court."  Pertinent to this Petition, the limitation period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). 28 U.S.C. § 2244(d)(2), however, expressly excludes from that one-year calculation "[t]he time during which a properly filed application for State post-conviction or other collateral review ... is pending."

Newman's conviction became final on May 15, 2008, which was the last day she could have sought certiorari review with the United States Supreme Court. However, pursuant to § 2244(d)(2), the time during which motions for sentence reconsideration and state post-conviction petitions were pending must be excluded from the one-year period.  This includes Newman's post-conviction petitions, and petitions for a writ of actual innocence.

In their briefs to the Court, the parties agree that Newman's federal petition for habeas relief is untimely. Upon independent review of the record, the Court agrees. Less than a year passed

between the date Newman's conviction became final (May 15, 2008) and the date she filed her first postconviction petition (March 4, 2009). Various collateral review proceedings remained pending until the Appellate Court of Maryland issued its mandate denying Newman's leave to appeal Frederick County's denial of her 2009 postconviction petition on June 30, 2015. However, more than a year passed where Newman had no collateral review pending, until she filed her motion to reopen her postconviction proceedings on October 11, 2016, rendering the current Petition untimely.

## II.      Newman is Not Entitled to the Actual Innocence Exception

Actual innocence is an "equitable *exception* to § 2244(d)(1), not an extension of the time statutorily prescribed." *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013) (emphasis in original). "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief." *Id*. at 392.  The merits of a petition which is concededly time-barred, may be reached if "new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id*. at 395, quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995).  In the context of an untimely petition, "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *Perkins*, 569 U.S. at 399.  "It would be bizarre to hold that a habeas petitioner who asserts a convincing claim of actual innocence may overcome the statutory time bar § 2244(d)(1)(D) erects, yet simultaneously encounter a court-fashioned diligence barrier to pursuit of [his] petition." *Id*.  "This rule, or fundamental miscarriage of justice exception, is grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id*. at 392.

Examples of the type of new evidence that have been found to satisfy the actual innocence

gateway standard are: (1) new DNA evidence and expert testimony "call[ing] into question" the "central forensic proof connecting [the petitioner] to the crime," as well as "substantial evidence pointing to a different suspect," *House v. Bell*, 547 U.S. 518, 540-41 (2006); (2) "sworn statements of several eyewitnesses that [the petitioner inmate] was not involved in the crime" and affidavits "that cast doubt on whether [the petitioner inmate] could have participated" in the offense, *Schlup*, 513 U.S. at 331; (3) a third party's consistent and repeated statement that the third party committed the offense, *Jones v. McKee*, No. 08 CV 4429, 2010 WL 3522947, at \*9-10 (N.D. Ill. Sept. 2, 2010); *Carringer v. Stewart*, 132 F.3d 463, 478-79 (9th Cir. 1997) (finding that the petitioner opened the actual innocence gateway where another person testified under oath that he committed the offense and separately boasted to other individuals that he set-up the petitioner); and (4) documentary evidence indicating that the petitioner was in another country on the day of the offense and five affidavits from individuals stating that the petitioner was outside the country at the precise time of the offense, *see Garcia v. Portuondo*, 334 F. Supp. 2d 446, 452-56 (S.D.N.Y. 2004). *See generally Schlup*, 513 U.S. at 324 (providing the Supreme Court's statement that examples of sufficient new reliable evidence for a gateway claim include "exculpatory evidence, trustworthy eyewitness accounts, or critical physical evidence").

Whether a petitioner has satisfied the miscarriage of justice exception requires the reviewing court to consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House*, 547 U.S. at 538 (internal quotation marks omitted). The new evidence must be evaluated with any other admissible evidence of guilt. *Wilson*, 155 F.3d at 404-05. "'To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial." *Schlup*, 513 U.S. at 324. "Without any new evidence of innocence, even the existence of a

concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at 315-17.

The Supreme Court "caution[ed], however, that tenable actual-innocence gateway claims are rare: 'A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt.'" *Perkins*, 569 U.S. at 386 (brackets omitted) (quoting *Schlup*, 513 U.S. at 329; *House*, 547 U.S. at 538; *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) ("Claims of actual innocence . . . should not be granted casually") (internal citations omitted)). To sustain a credible claim of actual innocence a Petitioner must marshal "new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S at 324. "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324. The gateway actual innocence "standard is demanding and permits review only in the extraordinary case." *House*, 547 U.S. at 538 (citation omitted); *see, e.g., Perkins*, 569 U.S. at 401 ("We stress once again that the [actual innocence] standard is demanding."); *Wilson*, 155 F.3d at 404 ("Claims of actual innocence . . . presented . . . as gateways to excuse a procedural default . . . should not be granted casually.").

"At the same time, though, the [actual innocence] standard does not require absolute certainty about the petitioner's guilt or innocence." *House*, 547 U.S. at 538. "Rather, the petitioner must demonstrate that more likely than not, in light of new and reliable evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *Teleguz*, 806 F.3d at 809 (citing *House*, 547 U.S. at 538). The actual innocence determination "requires a holistic judgment about all the evidence and its likely effect on reasonable jurors applying the reasonable-doubt standard."

10

*House*, 547 U.S. at 539 (internal citations and quotations omitted); *Finch v. McKoy*, 914 F.3d 292 (4th Cir. 2019).

In reviewing the record, the Court must "make a probabilistic determination about what reasonable, properly instructed jurors would do. The Court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House*, 547 U.S. at 538 (internal citations and quotations omitted). The petitioner must "demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice. Only if petitioner passes through the actual innocence gateway by satisfying this standard, can this Court consider and reach the merits of his claims. *Teleguz*, 689 F.3d at 329 (internal citations omitted).

Because Newman has litigated her claim of actual innocence on the merits in state court, that decision is entitled to deference in this Court. *Winston v. Kelly*, 592 F.3d 535, 557 (4th Cir. 2010). To reach a different result here, this Court would need to conclude that the Court of Special Appeals' decision was "objectively unreasonable." *Id*. at 554 (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)).

In the last reasoned state court decision, the Appellate Court of Maryland denied the merits of Newman's actual innocence claim. *Newman*, 2021 WL 3772030. The court concluded that the 2012 study[2] ("Study") did not constitute "evidence," because it would be irrelevant and inadmissible. Specifically, the Appellate Court of Maryland found,

> The Study sought to understand the beliefs and biases that legal
> professionals and domestic violence support professionals hold,
> which may unknowingly influence custody determinations…

---

[2]      Newman attached the 2019 law review article, to her petition for a writ of actual innocence, *Child Custody Outcomes in Cases Involving Parental Alienation and Abuse Allegations* (ECF No. 6-1 at 75; ECF No. 1-2) but it was not specifically mentioned by the Appellate Court of Maryland in the opinion.

> Nowhere does the study discuss bias in criminal cases, a specific analysis of bias in Maryland courts, or a breakdown of the geographic locations for all surveyed individuals.

*Id.* at *9. The Appellate Court of Maryland also determined that the 2012 study was not "*newly discovered* evidence" because, assuming it qualified as evidence, the issue of gender bias had been studied and was available in a report produced by a Special Joint Committee created by the Court of Appeals in 1987: *Report of the Special Joint Committee on Gender Bias in the Courts*, May 1989, 20 U. BALT. L. REV. 1, 9 (1990). *Id.* at *10.

Finally, *arguendo*, the Appellate Court of Maryland concluded that the 2012 study did not create a substantial probability of a different result. "Our analysis of the sufficiency of the evidence of Newman's conviction for conspiracy to commit murder in *Newman v. State*, No. 2274, Sept. Term 2005—which at no point references the stipulation as evidence supporting the conviction—further demonstrates that the Study does not, and could not, create a substantial possibility of a different verdict." *Id.* at *10.

There is nothing unreasonable about the state courts' conclusion that Newman did not make an adequate showing of actual innocence.  Law review articles and scientific studies are not the type of evidence that can adequately support a claim of actual innocence. *See, e.g., Spencer v. Murray*, 5 F.3d 758, 765 (4th Cir. 1993) (concluding that articles from law reviews and scientific journals about potential problems with DNA testing do not constitute newly discovered evidence); *Jones v. Edmonds,* No. 7:19-CV-00796, 2020 WL 5880726, at *7 (W.D. Va. Oct. 2, 2020) (concluding that law review articles and medical journal articles questioning the diagnosis of shaken baby syndrome are not evidence or newly discovered); *Glucksmann v. Eddy,* No. 20 C 2946, 2022 WL 17752382, at *12 (N.D. Ill. Dec. 19, 2022) (concluding that a law review article generally challenging the diagnosis of shaken baby syndrome is not new evidence).

The Appellate Court of Maryland was also not objectively unreasonable when it determined that the study would not have changed the outcome of Newman's trial. *See e.g., Spencer*, 5 F.3d at 766 (law review articles included conjecture about flaws in DNA testing, but there was no evidence flaws occurred in the particular test at issue); *Jones*, 2020 WL 5880726, at *7 ("General conclusions that [shaken baby syndrome] may not be a reliable diagnosis when a child shows particular types of injuries to her eyes and brain shed no light on what happened in [this particular] case.").

The child abuse allegations were indeed a collateral issue at Newman's trial. The Appellate Court of Maryland noted that the sufficiency of evidence analysis was conducted on direct appeal, and found to be constitutionally sound, without reference to the stipulation. *Newman*, 2021 WL 3772030 at *10. On direct appeal, the sufficiency of evidence analysis noted that the prosecution's theory against Newman was that she arranged for Landry to shoot Slobodow. ECF No. 6-1 at 18-19. To that end, the state offered evidence at trial of the close relationship between Newman and Landry, including the fact that they were college roommates (*id.* at 20), Landry was the godmother of Newman's children (*id.*); Landry and Newman owned property together and held joint bank accounts (*id.* at 21); Newman lost her job when she vacationed with Landry in Hawaii (*id.* at 22); and Newman and the children moved to London to be with Landry when she accepted a job there. *Id.* The state also produced evidence that Landry played a substantial role in Newman's divorce and custody proceedings. She controlled "substantial sums of money" that were transferred to her by Newman and were used to finance the custody battle. *Id.* at 24. Landry attended attorney meetings and hearings, used her own money to pay legal fees, and paid for three private investigators. *Id.* at 25. The state also offered evidence that Landry and Newman had contacted each other by phone 170 times in the 36 days before the shooting. *Id.*

Additionally, the state offered email correspondence between Newman and a third party where, referencing Slobodow, she stated, "this dad should be taken off the earth." *Id.* at 26. The state also offered testimony from a third party that Newman said she and Landry were looking for an untraceable gun to kill Slobodow because he was molesting the children. *Id.* at 27.

Given the circumstantial evidence of the conspiracy produced at trial, and the poor probative value of the proffered studies, the Court cannot say that no reasonable juror would have found Newman guilty had they seen the studies about bias against mothers in child custody battles. Accordingly, Newman is not entitled to the actual innocence exception and her federal habeas petition is dismissed as untimely.

## III.    Newman's Double Jeopardy Claim is Procedurally Defaulted and Meritless

Even if Newman could clear the hurdles necessary to satisfy the actual innocence gateway, her Double Jeopardy claim would fail because it is procedurally defaulted and because it lacks merit.

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings."  *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005).  The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S. 415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

14

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

Newman contends that her retrial in 2005 in Frederick County violated the Double Jeopardy Clause because her first conviction was vacated based on insufficient evidence. As an initial matter, Newman concedes that her Double Jeopardy claim is procedurally defaulted because it was never presented to the Maryland state courts. ECF No. 4 at 13. Newman asks that the procedural default be excused through the actual innocence exception. As discussed, *supra*, Newman has failed to meet the requirements for the actual innocence gateway. In any event, Newman's Double Jeopardy claim fails on the merits.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy." U.S. Const. amend. V. Since the Supreme Court's decision in *United States v. Ball,* 163 U.S. 662 (1896), it has been established that the Double Jeopardy Clause is no bar to the retrial of a defendant who has been convicted of a crime but whose conviction has been overturned on appeal due to an error in the proceedings leading to conviction. Although the practice of permitting a second trial following a reversal on appeal differs from that under the English common law, it is nevertheless a "well-established part of our

constitutional jurisprudence," *United States v. Tateo,* 377 U.S. 463, 465 (1964), and is supported by a number of policies vital to the "sound administration of justice." *Id.* at 466.

The Court notes, contrary to Newman's assertion, her initial conviction was not vacated because of insufficient evidence. The Maryland Supreme Court remanded Newman's case for a new trial because the trial court committed an error that was not harmless beyond a reasonable doubt when it admitted testimony that was protected by the attorney-client privilege. *Newman v. State*, 384 Md. 285, 312-13 (2004). The United States Supreme Court has specifically found that the Constitution does not prohibit retrial under these circumstances. *Lockhart v. Nelson,* 488 U.S. 33 (1988) (permitting retrial where appellate court reverses conviction based on erroneously admitted evidence, even though remaining evidence was insufficient to establish guilt).

Newman attempts to distinguish her case from *Lockhart*. ECF No. 4 at 26-30. However, the holding of *Lockhart* has been applied generally to retrial after reversal for trial error:

> The Double Jeopardy Clause affords protection against a retrial following reversal based solely on evidentiary insufficiency, but not against a retrial following reversal based on trial error. While the former is in effect a finding "that the government has failed to prove its case" against the defendant, the latter "implies nothing with respect to the guilt or innocence of the defendant," but is simply "a determination that [he] has been convicted through a judicial *process* which is defective in some fundamental respect."

*United States v. Akpi,* 26 F.3d 24, 26 (4th Cir. 1994), (*citing Lockhart,* 488 U.S. at 40).  As Newman's original conviction was reversed for trial error, her 2005 retrial was not a violation of the Double Jeopardy Clause. Accordingly, even if her Petition had been timely and the claim had not been procedurally defaulted, she would not have been entitled to relief.

## CERTIFICATE OF APPEALABILITY

When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Newman has not demonstrated that a certificate of appealability is warranted, and so the Court shall not issue it.  Newman may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

A separate Order follows.


__7/11/2023__                                          _____/s/_____
Date                                                           RICHARD D. BENNETT
                                                               UNITED STATES DISTRICT JUDGE